BROTHERS, The (MAXWELL v.). See Case No. 9,322.

BROTHERS, The (MOODIE v.). See Case No. 9,743.

BROTHERSON (ROOT v.). See Case No. 12,036.

BROTHERTON (HADE v.). See Case No. 5,892.

## Case No. 1,970.

### BROWER et al. v. The MAIDEN.

[Gilp. 294.][1]

District Court, E. D. Pennsylvania. March 17, 1832.

SEAMEN—DESERTION—WAGES—ACT JULY 20, 1790.

1. Where a seaman, who has signed shipping articles, voluntarily absents himself from the vessel, in a port of the United States, an entry may be made in the log book and his wages forfeited, according to the provisions of the fifth section of the act of 20th July, 1790 [1 Stat. 133], or he may be apprehended and detained in gaol until the vessel is ready to proceed on her voyage. according to the provisions of the seventh section of that act.

2. Where a seaman is apprehended and detained in gaol until the vessel is ready to pro-

ceed on her voyage, he does not forfeit his wages, but the cost of his commitment and of his support in gaol is to be deducted from them.

[Cited in The Paul Revere, 10 Fed. 160.]
[See Pierce v. Patton, Case No. 11,145; Bray v. The Atlanta, Id. 1,819.]

3. The charge for a person necessarily employed in the place of a seaman, who has voluntarily absented himself, and has been apprehended and detained in gaol, is to be deducted from his wages.

[Cited in Jordan v. Williams, Case No. 7,528.]
[See Brown v. The Neptune, Case No. 2,022; Pierce v. Patton, Id. 11,145; Lang v. Holbrook, Id. 8,057; Wilson v. The Mary, Id. 17,823; Ingraham v. Albee, Id. 7,044; Snell v. The Independence, Id. 13,139. But see Magee v. The Moss, Id. 8,944.]

[4. To forfeit wages under Act July 20, 1790 (1 Stat. 131), an entry must be made in the log book of the time of absence.]

[See Magee v. The Moss, Case No. 8,944; Cloutman v. Tunison. Id. 2,907; The Cadmus v. Matthews, Id. 2,282; The Phoebe v. Dignum, Id. 11,110; The Hercules, Id. 6,401; Wood v. The Nimrod, Id. 17,959; The Catawanteak, Id. 2,510; Knagg v. Goldsmith, Id. 7,872; Bray v. The Atalanta, Id. 1,819.]

In admiralty. On the 1st of December, 1831, the libellants [Peter Brower, Zoeth Keen, and Jacob Hess] shipped [on the schooner Maiden, Joseph Baymore, master] for a voyage from Philadelphia to Wilmington, in the state of North Carolina, and back to Philadelphia at the wages of fourteen dollars a month. On the 2d December, the vessel left this port and proceeded as far as Chester, on the Delaware river, where, owing to the quantity of floating ice, she was obliged to make a harbour. Here she remained ice-bound and unable to continue her voyage for forty-five days. While she lay at Chester, the libellants left the vessel and returned to Philadelphia. They alleged, as the cause, that the weather was extremely severe, so as to endanger them with being frost bitten; and that they came to represent their situation to the owners, offering to return to the vessel and complete their contract, as soon as the season permitted. While in Philadelphia they were apprehended, and committed to prison as deserters, by a justice of the peace, under the seventh section of the act of 20th July, 1790. They were afterwards taken from prison, by the captain, returned on board the vessel, performed the voyage, and arrived at the port of Philadelphia on the 8th March, 1832.

The respondent declared in his answer, that the accommodations of the vessel were quite sufficient for the comfortable protection of the crew, and that he had suffered much loss owing to their absence, as well as that it had made the detention of the vessel longer than it would otherwise have been. He therefore prayed a deduction from the wages of the libellants; 1. For the expenses of the imprisonment; 2. For loss by the detention of the vessel; 3. For the amount paid to persons hired in their places. He further contended for a suspension of the

[1] [Reported by Henry D. Gilpin, Esq.]

wages of the libellants during their confinement. [Decree for libellants.]

Haley, for libellants. The following cases were cited: 1 Story, Laws, 104 [1 Stat. 132]; Abb. Shipp. 135, 146, 353, 463; Bordman v. The Elizabeth [Case No. 1,657].

Grinnell, for respondents. The following cases were cited: Abb. Shipp. 464; Thorne v. White [Case No. 13,989]; Bray v. The Atalanta [Id. 1,819]; Luscomb v. Prince, 12 Mass. 576, 579.

HOPKINSON, District Judge, delivered the following opinion:

The men have not shown a good cause for leaving the ship. It was their duty to remain with her, for her care and preservation, and to be ready to sail, on the first chance, on her voyage. The question then is, to what penalty, forfeiture or deduction of wages are they liable for their desertion? It was at the option of the master, when they left the ship, to enter their desertion in the log book, according to the provisions of the fifth section of the act of 20th July, 1790 (1 Story, 104), or to have them committed to prison, and detained until the vessel was ready to sail, under the seventh section. He chose the latter. The effect of the first proceeding would have been a forfeiture of all the wages then due to the seamen, and a termination of the contract with them. The effect of the second is to continue the contract in force, and detain the men in prison in order to compel their performance of it. When they are taken from prison to the vessel, and sail with her, no new contract is made with them, but both parties proceed under the original shipping articles. In truth, even while in prison, the seamen are in the custody of the captain; they are at his disposal, and may be taken out at his pleasure; and they are so taken out when the vessel is ready to sail. He is allowed to confine them in gaol on shore for his convenience and their safe keeping; but they are, nevertheless, as much his prisoners as if they had been confined on board of his vessel. When seamen are confined on board, for any misconduct or disobedience, has it ever been pretended that their wages stop, or are forfeited during their confinement? I know of no such case. Their imprisonment is their punishment, and a forfeiture of wages has not been added to it. If the forfeiture of wages is the object, the manner of effecting it was pointed out by a preceding section in the law; an entry must be made in the log book of the time of absence; without that no forfeiture or suspension of wages is incurred by an absence and a subsequent return to duty. No entry was made in this case; and if the forfeiture or deduction now claimed against these men were allowed, the consequence would be that seamen, deserting a vessel, and at large during their desertion, would be entitled to their wages on their return; while those who were suffering in a gaol would, in addition to this punishment, lose their wages accruing during their imprisonment. Under the seventh section of the act, no such forfeiture or deduction is given; the confinement and the cost of the commitment is the only penalty declared. This principle is adopted in the case of Bray v. The Atlanta [Case No. 1,819], and I know of no judicial decision which impeaches it.

Another question has been moved in this case: whether the money paid for the support of these men in gaol, may be deducted from their wages. Does it come under the words of the act, which provides that the men are "to be delivered to the master, he paying all the cost of such commitment, and deducting the same out of the wages due to such seaman or mariner?" The word 'costs' seems to have a technical meaning, and is usually applied to the legal charges of a proceeding; but the word used in the act is 'cost,' and its large and full sense means 'charge, expense, loss, detriment.' In this sense it will cover the item in question. These men were wrong-doers, they violated their contract, and this expense was incurred in consequence of the violation. They are not entitled to any extraordinary indulgence or effort to save them from the consequences of their wrong; but a liberal construction should be given to the act to restrain the mischief intended to be prevented. At all events, it was money paid for them, on their account, without which they would have suffered by the privation of food, and they could not be restored to liberty until it was paid. It is true that the captain was bound to maintain them, but only on board of the vessel, and not when they left her without his leave, and were on shore, either in a place of their own seeking, or where their own misconduct made it necessary to put them. We must presume that this vessel was provided with all necessary stores for the crew, and if the owner must also pay for their boarding in prison, the expense is doubled upon him.

It is my opinion that the libellants are entitled to their wages while they were in prison, but that there must be deducted from these the cost of their commitment, including their support in gaol, the amount paid to the men hired in their place, and the stage hire for taking them down to Chester to the vessel.

The amount of wages claimed is..... $114 02
From which are to be deducted
  The cost of commitment and
    support ................. $22 44
  The pay of the man hired... 15 00
  And the stage hire........ 2 25
                       ——— 39 69
                            $74 33

Decree: That the libellants do recover from the respondent the sum of seventy-four dollars and thirty-three cents, with costs.